Jodianne Wagner
3625 E Norwood Road
Colbert, WA 99005
Phone: (509) 723-5498
40dfkspokaneinfo@gmail.com
Pro Se

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 2 8 2019

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

JODIANNE WAGNER PRO SE,

     Plaintiff,

vs.

COUNTY OF SPOKANE, a public entity; DOES 1 through 3, individuals, inclusive; Andria Underwood, an individual; Laura Garr, an individual,

     Defendants

Case No.: 2:19-CV-040-RMP

COMPLAINT FOR DAMAGES

Claim 1 – 42 U.S.C. §1983
- Count 1 – Unwarranted Entry and Search

Claim 2 - Monell-Related Claims
- Count 1 as to County of Spokane

## Jurisdiction and Venue

1. Plaintiff JODIANNE WAGNER, brings this action pursuant

to 42 U.S.C. §1983, *et. seq.*, to redress the

deprivation of rights secured to her under the United

States Constitution, including the First, Fourth, and

Fourteenth Amendments, and under federal and state

law. Said deprivations were inflicted by the

Defendants herein, and each of them, in some manner.

Each of the Defendants herein were at all relevant

times acting under color of law.

2. Jurisdiction is conferred on this Court by 28 U.S.C.

§§ 1343(a)(3) and 1343(a)(4), which provide for

original jurisdiction in this Court of all suits

brought pursuant to 42 U.S.C.§ 1983. Jurisdiction is

also conferred by 28 U.S.C. § 1331 because the claims

for relief derive from the United States Constitution

and the laws of the United States.

3. Because the acts and omissions complained of herein

occurred in the County of Spokane, and it is believed

that all living parties currently reside in the

County of Spokane (except for UNDERWOOD who is

believed to have moved to King County, Washington),

venue is proper in the District Court for the Eastern

District of Washington, at Spokane.

**Parties**

4. At all times relevant to this Complaint, Plaintiff

JODIANNE WAGNER resided in the County of Spokane,

Washington, maintaining a family as the mother of her

children.

5. At all times applicable herein, defendant, COUNTY OF

SPOKANE, was and is a public entity ("Spokane County"

or "County of Spokane").

6. Plaintiff is informed and believes and thereon alleges

that, at all times relevant herein, defendant, ANDRIA

UNDERWOOD, was an individual residing in the County of

Spokane and employed by the Washington Department of

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983     • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS     • COUNT 1 AS TO COUNTY OF
SPOKANE - 4

Health and Services, Children's Division, Spokane

County. She now works in Bellevue, WA for the

Washington State Department of Children, Youth and

Families. On information and belief, ANDRIA UNDERWOOD,

was a Social Service Specialist - Afterhours. As part

of her job duties she investigates allegations of

suspected child abuse and/or neglect. On information

and belief, ANDRIA UNDERWOOD, came out to the Wagner

family home on January 29, 2016 and without warrant

entered and searched the residence.

7. Plaintiff is informed and believes and thereon alleges

that, at all times relevant herein, defendant, LAURA

GARR, is and was an individual residing in the County

of Spokane and employed by the Washington Department

of Health and Services, Children's Division, Spokane

County. On information and belief, LAURA GARR was a

Social Service Specialist - Afterhours.  As part of

her job duties she investigates allegations of

suspected child abuse and/or neglect.  On information

and belief, GARR, came out to the Wagner family home

on January 29, 2016 and without warrant entered and

searched the residence.

8. Plaintiff is informed and believes and thereon alleges

that, at all times relevant herein, defendants, DOES

1-3 inclusive were individuals residing in the

County of Spokane and employed by COUNTY OF SPOKANE as

Spokane County Sheriff's Officers. Plaintiff is

further informed and believes that DOES 1-3 were an

integral participant in the unwarranted entry and

search of Plaintiff's home on January 29, 2016, as

detailed further in the allegations below.[1]

_____

[1] At the present time DOES 1-3 are unknown but named

defendants herein. It is anticipated that the true identities of

9. At all times applicable herein, defendant, COUNTY OF

SPOKANE was and is a public entity ("Spokane County").

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983       • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS       • COUNT 1 AS TO COUNTY OF
SPOKANE - 7

10.     Defendants DOES 1 through 3 are sued as

fictitious names, their true names and capacities

being unknown to Plaintiff. When ascertained,

Plaintiff will amend this Complaint by inserting

their true names and capacities. Plaintiff is

informed and believes and thereon alleges that

each of the fictitiously named Defendants is

responsible in some manner for the occurrences

herein alleged, and those Defendants proximately

caused, are responsible for and/or legally liable

for Plaintiff's damages as herein alleged. Each

reference in this complaint to "Defendant,"

"Defendants," or a specifically named Defendant

refers to and includes all Defendants sued under

fictitious names. On information and belief,

Plaintiff makes all allegations contained in this

Complaint against all Defendants,

including DOES 1 through 3.

---

[1] Continued. …DOES 1-3 will be ascertained through the discovery process. At such time as DOES 1-3 are identified, Plaintiff will seek leave of Court to amend this complaint to identify DOES 1-3 by name.

11.     Whenever in this Complaint reference is made to

any act of Defendants, such allegations shall be

deemed to mean all named Defendants and DOES 1

through 3, or their officers, agents, managers,

representatives, employees, heirs, assignees,

customers, tenants, who did or authorized such

acts while actively engaged in the operation,

management, direction or control of the

affairs of Defendants and while acting within the

course and scope of their duties, except as

specifically alleged to the contrary.

12.    At all times herein mentioned and with respect to

the specific matters alleged in this Complaint,

Plaintiff is informed and believes that each

Defendant (including DOES 1 through 3), was a

parent, subsidiary, affiliate, alter ego,

partner, agent, franchisee, licensee, employee,

employer, controlling franchiser, controlling

licensor, principal, and/or joint venturer of

each of the remaining Defendants, and was at all

times acting within the course and scope of such

agency, service, employment, control and/or joint

venture, and each defendant has ratified, approved,

conspired in, profited from and/or authorized the acts

of each of the remaining Defendants and/or failed to

prevent such acts when having the power and/or duty to

do so, with full knowledge of said acts.

13.    At all times mentioned herein, each of the above

identified defendants was an officer and/or agent

of the County of Spokane and/or the Washington

Department of Social and Health Services,

Children's Administration - as the case may be,

and was acting under color of law within the

course and scope of their respective duties in

doing the things and acts herein alleged.

## GENERAL ALLEGATIONS

14.    As of January 29, 2016 JODIANNE WAGNER, her

husband, Jeffrey Wagner and her seven minor

children, M.W., M.E.W.[3], L.W., J.W., M.J.W.[3],

---

[3]Because five siblings have the first two initials, the younger childrens' designation includes their middle initial.

M.P.W. [3], M.A.W.[3], constituted a family unit,

entitled to constitutional protections,

including, but not limited to, the right to live

together free of unwarranted governmental

interference, the right to familial privacy, and the

right of parents to reasonably direct the upbringing

of their children. In addition Plaintiff enjoyed a

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF
SPOKANE - 13

separate and distinct right to live together without

undue governmental interference. M.W., 16 years old,

was residing outside the home at that time. Plaintiff

and her husband also had an adult child living in

California.

15.    As of January 29, 2016, when Washington State

Department of Social and Health Services and

Spokane County Sheriff Department entered their

home M.E.W. was 14, L.W. was 13, J.W. was 10,

M.J.W. was 8, M.P.W. was 4 and M.A.W. was 2 years

old. Plaintiff had been adequately caring for her

children with her husband as a married mother for

many years and enjoyed a strong and loving bond

with her children. At this time, M.E.W., L.W.,

J.W., M.J.W., M.P.W. and M.A.W were happy and

healthy, well cared for, and not in need of

medical care or attention.

16. Plaintiff and Jeffrey are the biological parents of

M.W., M.E.W., L.W., J.W., M.J.W., M.P.W. and M.A.W.

Plaintiff and all of her minor children lived in the

Wagner's marital home in December 2015.

16.    On December 3, 2015, M.W. engaged in a physical

fight with her younger smaller sister, L.W. The family

dog intervened, biting M.W. Plaintiff was at work and

Jeffrey Wagner was shopping.  M.W. called 911. Spokane

County Sherriff officers responded to the home along

with paramedics and a SCRAPS (Spokane County Regional

Animal Protection) officer. Paramedics transported

M.W. to the Emergency Department where she received

10-12 stitches. Sheriff's officers and the SCRAPS

officer left the dog in the home with the children who

were home; L.W., J.W., M.J.W., M.P.W. and M.A.W. The

dog was never declared dangerous or potentially

dangerous by SCRAPS.

     17.    A paramedic reported the incident to Child

Protective Services.

18.    A Family Team Decision Meeting was called by

child protective services and held on December 7,

2015. Child protective services threatened to

seize all the children from the home and place

them in foster care if the dog was not removed

from the home. Child protective services also

recommended that M.W. be placed outside the home.

M.W. was pregnant and moved into a maternity home

on December 8, 2015. Plaintiff was also pregnant

- eight months along and her pregnancy was

discussed during the meeting. Social worker,

Debbie Wiechart, from L.W.'s school, Meadow Ridge

Elementary, attends the meeting.

19.    Plaintiff's attorney sends notice of appearance

to child protective services December 7, 2015.

20.    On December 21, 2015, a social worker from the

maternity home calls CPS investigator Tracey

Arnold and reports M.W. heard a child on the

phone speaking to the dog. Arnold calls the

Wagner's home phone and speaks to M.E.R. Arnold

then contacts the Plaintiff's attorney and is

told the dog is not in the home. Arnold is

reminded that all communication between CPS and

Plaintiff is to go through Plaintiff's attorney.

21.    CPS closed the case as unfounded (no finding of

negligent treatment or maltreatment) on January

20, 2016.    It was documented in the investigative

assessment at the closing of the case that the

social worker Tracey Arnold believed the dog was back

in the home. Multiple negative comments about the

large size of their family and the Wagner's Catholic

religion were made.

22.    Arnold documents that on January 26, 2016 at 10:10

a.m. that a referent reported one of the boys attending Colbert

Elementary school told the "para and bus duty staff" that the

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF
SPOKANE - 19

family dog is back in the home and child made the disclosure on January 15, 2016. Social worker had called referent back on January 26, 2016 and left a voice mail stating this new information would be noted but the case is already closed. Social worker also notified referent that social worker documented in last case at time of closure that the Department believed the dog was back in the home.

23.   Plaintiff scheduled an induction of labor to be conducted on the morning of January 29, 2016. Her children were well aware and arrangements were made for the two younger children to stay with a long-time family friend who was also their former day care provider. M.E.W. would watch the older children after they rode the bus home from school so her husband could join her in the hospital for labor.

24.   At 2:22 p.m. on January 29, 2016, an intake is received by CPS by a referrer from Meadow Ridge Elementary. The referrer gives names and ages of the children and states the Plaintiff is pregnant. The referrer states that in December 2015 the family's dog attacked M.W. and that there has been suspicion that the dog was back in the home. Referrer states L.W. reports that the dog is clumsy and will "suffocate her in her sleep" because he is clumsy. The referrer had no additional concerns to report. No allegations about inadequacy of food or sleeping

arrangements for the children were made. Intake documents that School Resource Officer Chris Young was also present during the intake. He states that he called SCRAPS and spoke to Field Operations Manager Charles Brant. Charles said that CPS can request a "check on conditions" and SCRAPS will go to the home. If there is any evidence of an animal, SCRAPS can request a search warrant. Intake documented both Deputy Young and Charles Brant are available to assist social worker.

25. An intake decision was made by CPS to respond within 24 hours. It was assigned to after-hours CPS workers to make the initial-face-to-face "IFF" with the children. No attempt is made to phone the Wagners at home. No attempt is make to contact SCRAPS. Defendants UNDERWOOD and GARR drive to the Wagner home at approximately 7 p.m. and wait at the end of their long private driveway in the dark. They called Crime Check, Spokane County's non-emergency law enforcement line, and waited for approximately an hour for Spokane County Sheriff's officers.

/ / /

- *UNWARRANTED SEARCH #1: After hours CPS workers and Sheriff Officers Go to The Home, Bully Their Way In, and Search the Wagner Home and Interrogate M.E.W. Without Obtaining a Warrant*

26. Six hours after CPS received an intake, at approximately 8 p.m., on January 29, 2016, UNDERWOOD and GARR visited the Plaintiff's home with Officers 1-3 of the Spokane County Sheriff's Department.

27. M.E.W. responded to a knock on her parents' door. She looked in the peep hole and saw a man standing in a baseball cap, who she assumed was her father since he had called earlier from the hospital and said he would be home soon to check on the children.

28. UNDERWOOD and GARR and Sheriff's officers already opened the screen door before M.E.W. opened the wooden door. Law enforcement asked if Plaintiff was home and M.E.W. stated she was not at home and she was babysitting and they needed to come back later. The social workers stepped in first and then three Sheriff officers stepped inside and walked to the hall-way, forcing M.E.W. to step aside as they entered. Having no choice in the matter, M.E.W. stood out of the way. At no point did they ask M.E.W. permission to enter the home, search the home, or interrogate her.

29. A Sherriff Officer asked M.E.W. where her parents were. M.E.R. stated her parents were in the hospital having a baby. UNDERWOOD or GARR responded stating "that's right she's

having her ninth baby today". UNDERWOOD or GARR laughed and said "nine babies jeez!".

30.   UNDERWOOD or GARR told M.E.W. to show her where the children slept. Both UNDERWOOD and GARR looked inside all the bedrooms on the top floor. They carried a clipboard and interrogated M.E.W. throughout their approximately 25 minutes in the house.

31.   UNDERWOOD or GARR asked M.E.W. if they had food and to show her where the food was to prove it for "their safety". M.E.W. opened a cupboard in the kitchen. At no time did Officers DOE 1-3 object to CPS workers' search or interrogation, or attempt to intercede on M.E.W's behalf. Rather they appeared to be standing by, at the ready, to provide physical and armed support for whatever CPS workers had in mind.

32.   UNDERWOOD and GARR and sheriff's officers left the Wagner home.

33.   Mr. Wagner calls home to inquire with M.E.W. how she and the younger children are doing and is informed by her of the upsetting events that just unfolded in the home. Mr. Wagner informs Plaintiff who borrows a nurse's cell phone and calls her attorney. Plaintiff's water had just been broken after laboring all day.  Plaintiff and Mr. Wagner are understandably very upset.

34.   M.E.W., Mr. Wagner, Plaintiff and Plaintiff's attorney do not understand why UNDERWOOD and GARR and sheriff's officers were out at the house without contacting Plaintiff's attorney first and especially since their CPS case had just closed. Plaintiff's attorney advises Mr. Wagner to go home to be with the children and leave Plaintiff in the hospital to labor. Plaintiff later convinces Mr. Wagner to return to the hospital and M.E.R. is instructed not to open the door to anyone. Plaintiff's labor is prolonged, lasting over 24 hours and she is unable to sleep from the emotional distress and outrage over having her home invaded. Plaintiff's epidural anesthesia is shut off in an attempt to shorten her labor and her obstetrician has to manually dilate her cervix.  Plaintiff gives birth approximately 12 hours after learning her home was invaded.

35.   Mr. Wagner returns home on January 30, 2016 to be with the children after his newborn son and Plaintiff are stable. He comes back to the hospital later that day and while he is gone CPS workers again come to the house and speak to M.E.W. They did not bring law enforcement with them.

36.   Mr. Wagner stays at home the night of January 30, 2016 and returns on January 31, 2016 to take Plaintiff and their newborn home. Again, while he was away from CPS workers come to

the house and speak to M.E.W. They do not bring law enforcement with them.

37.   On February 1, 2016 CPS worker Arnold and another CPS worker come to the Wagner home. They do not bring law enforcement with them. Mr. Wagner greets them in the driveway telling them to leave and reminds them that all communication is to go through Plaintiff's attorney.

38.   Despite having no specific, reasonable, or articulable evidence that M.E.W., L.W., J.W., M.J.W., M.P.W., M.A.W. were in imminent danger of sustaining serious bodily injury or death within the short amount of time it would have taken to obtain a warrant, CPS workers entered and searched the Wagner home on January 29, 2016 and interrogated M.E.W. without parental permission.  Plaintiff is further informed and believes and thereon alleges that DOES 1-3 of the Spokane County Sheriff Department jointly acted with, collaborated with, or otherwise aided, assisted Defendants CPS workers UNDERWOOD and GARR in the unwarranted entry and entry of the Wagner home and interrogation of seizure of M.E.W. and Officer DOES 1-3 directly participated in the search, by knowing and agreeing, authorizing, ratifying, sanctioning, carrying out, or taking charge of a plan to search the home to such an extent that they were an integral participant in the unwarranted entry and search. Alternatively,

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF
SPOKANE - 25

DOES 1-3 failed to intercede to prevent the violation of Plaintiffs' rights by preventing UNDERWOOD and GARR from entering and searching the home and interrogating M.E.W. as they witnessed the events unfolding.

39.   Defendants UNDERWOOD and GARR and DOES 1-3 did not present Plaintiff or M.E.W. with a court order or warrant, authorizing the search of the Wagner home or interrogation of M.E.R. without parental consent, (because they did not have such an order); moreover Defendants did not articulate any reasonable basis for believing that M.E.W., L.W., J.W., M.J.W., M.P.W., M.A.W. would suffer great bodily injury or death if the Defendants, took the minimal amount of time necessary to seek a court order or warrant. No exigent circumstances existed at the time of the search.

40.   Said non-consensual and unwarranted search or the Wagner home and interrogation of M.E.W was unlawful and in violation of Plaintiff's Due Process rights, familial association rights, liberty interests, and familial privacy, arising under and guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as well as under the Washington State Constitution.

/ / /

/ / /

### FIRST CLAIM FOR RELIEF

### COUNT 1

### For Violation of Civil Rights (42 U.S.C. §1983)

**(Procedural Due Process, Unlawful Seizure, Invasion of Privacy,**

**and**

**Interruption of Familial Association/Failure to Intercede)**

**By PLAINTIFF**

**Against Defendants, ANDRIA UNDERWOOD, LAURA GARR,**

**DOES 1 through 3, inclusive**

41.  Plaintiff realleges, and incorporates herein as if set forth in full, paragraphs 1 through 40 above.

42. Plaintiff is an individual and citizen of the United States, protected by 42 U.S.C. § 1983, et seq.

43.  At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was "clearly established" such that any reasonable social services agent and/or police officer in Defendants' situation would know it is unlawful to question, threaten, examine, or search a child

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF
SPOKANE - 27

or home in the absence of exigent circumstances without first

obtaining a warrant to do so. Furthermore, any such reasonable

social worker and/or police officer would know that to do so

would constitute a violation of the parents', and children's,

well-elaborated constitutional right to live together without

governmental interference – which rights are protected under the

First and Fourteenth Amendments to the United States

Constitution.

44.   Defendants, and each of them, had, at all times

relevant herein, an

affirmative duty and obligation to recognize, acknowledge, and

respect the

Plaintiff's rights, and to conduct themselves in a manner that

confirms, provides

for the preservation of, and does not violate the rights

guaranteed Plaintiff under

the United States Constitution, including, without limitation,

the protection of

parental rights, the right to privacy, family integrity and the

right to familial

relations.

45.   Defendants, and each of them, were acting under color

of state law

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF
SPOKANE - 28

when they jointly acted, or knew and agreed and thereby

conspired, to violate

Plaintiffs' constitutional rights by, entering and searching the

Wagner home, and interrogating M.E.W., without proper or just

cause and/or authority, in the absence of any exigency, and

without first obtaining a warrant or other court order – thereby

violating Plaintiff's rights under the First and Fourteenth

Amendments to the United States Constitution.

46.   None of the Defendants sought, or obtained, a warrant

prior to searching Plaintiff's home or interrogating her child,

M.E.W. on January 29, 2016,  at the family home.  Defendants

jointly acted or conspired to search the home, as described

above, knowing that no warrant for the home's search was issued

and that exigent circumstances did not exist. Plaintiff did not

consent, at any time, to the searches described herein above,

nor did her husband.

47. At no time *ever* did any of the Defendants have any

specific,

articulable evidence to support any reasonable basis to believe

that any of

Plaintiff's six children were in immediate danger of sustaining

serious bodily

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF
SPOKANE - 29

injury or death within the time it would have taken the

Defendants to seek and

obtain a warrant. Indeed, Plaintiff is informed and believes and thereon

alleges that Defendants, and each of them, purposefully or

recklessly failed to seek

a warrant, in derogation of Plaintiffs' clearly established

rights to due process and familial association.

48.  At the time of search, other more reasonable and less

intrusive alternative means existed to secure Plaintiffs' civil

rights and security, short of the

warrantless search of the home and interrogation of M.E.W. , yet

these defendants, and each of them, intentionally, or with a

reckless, wanton, or malicious disregard for Plaintiff's rights,

failed to pursue or investigate such less intrusive alternative

means.

49.  With respect to DOES 1-3, through their extensive

training as police officers, on information and belief, were

aware of the aforementioned

constitutional rights of parents and children to live together

without government

interference including to be free of unwarranted searches. On

information and belief, he was equally aware through his

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF SPOKANE - 30

training and experience that he had an affirmative obligation to intercede and intervene to protect the rights of citizens, like Plaintiff, when he witnessed her constitutional rights being violated. Not only did they stand by and fail to intercede and intervene on Plaintiff's behalf – he went so far as to provide agreement, concurrence, and armed support for CPS workers 1 and 2 when they decided to search Plaintiff's home and interrogate her child

without a warrant and in the absence of any exigency.

50.    No reasonable officer in DOES 1-3's positions could have believed that their conduct, agreeing to and supporting the warrantless search of Plaintiff's home and interrogation of her child under the circumstances then presented, was lawful.

51.    Defendants committed said unconstitutional acts without proper justification or authority, and without probable cause, exigency, or court order. Defendants, and each of them, maliciously violated and/or conspired to violate the

civil rights of Plaintiffs, including violation of Plaintiff's rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to,

entering and searching Plaintiff's home and interrogating her child, without proper or just cause and/or authority, and by use

of coercion, duress, or fraud to obtain, or attempt to obtain,

evidence. Said acts were taken deliberately, with callous or

reckless indifference to the substantial rights of Plaintiff, or

fueled by an evil motive or intent.


    52.  As a direct and proximate result of these Defendants'

misconduct, Plaintiff has suffered, and will continue to suffer,

general and special damages

according to proof at trial, including but not limited to,

physical and/or mental

anxiety and anguish, among other things.

    53.  Due to the malicious, wanton, callous, reckless,

wrongful and

despicable nature of the Defendants' misconduct, as herein

alleged and described,

Plaintiff is entitled to recover punitive damages against the

individual Defendants,

and each of them, in accordance with law and subject to proof at

trial.

**SECOND CLAIM FOR RELIEF**

**Count 1**

**(*Monell*-Related Claims)**

**By Plaintiff**

**Against COUNTY OF SPOKANE**

54.   Plaintiff realleges, and incorporates herein as if set forth in full,

paragraphs 1 through 53, inclusive.

55.   Defendant County of Spokane, including through its child welfare

services agency, is a "person" within the meaning of 42 U.S.C. § 1983 and subject

to *Monell* liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

Defendants, and each of them, acted under color of state law when committing the

acts alleged herein, in violation of Plaintiff's rights.

56.   Defendant County of Spokane, including through its entity CPS and Sheriff's Department those individuals in their

official capacity who had supervisory and/or policy making
authority, had a duty to Plaintiff all times to establish,
implement and follow policies, procedures, customs and/or
practices (hereinafter referred to as "policy" or "policies")
which confirm and provide the protections guaranteed Plaintiff
under the United States Constitution, including those under the
First, Fourth and Fourteenth Amendments, to include without
limitation, the protection of the right to familial relations;
the right to privacy; the right not to be defamed or
stigmatized; the right to be free of governmental deception, and
the right to procedural due process. Said defendants also had a
duty to use reasonable care to select, assign, supervise, train,
control and review the activities of all their agents, officers,
employees and those acting under them, including within CPS and
the Sheriff's Department, so as to protect these constitutional
rights; and to refrain from acting with deliberate indifference
to the constitutional rights of Plaintiff in order to avoid
causing the injuries and damages alleged herein.

57.    Moreover, based on the duties charged to Defendant
County of Spokane, including the powers to seize children from
their parents' care, the
County of Spokane, and its policymaking officials, knew or
should have known of
COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983        • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS        • COUNT 1 AS TO COUNTY OF
SPOKANE - 34

the need to establish customs, policies, and practices required to protect the

aforementioned civil rights of parents and their children with whom their CPS

agents and Sheriff's officers regularly came into contact.

58.  Defendant County of Spokane established, adopted, followed, and/or

implemented and/or turned a blind eye to customs, and/or practices which were

followed, complied with, and carried out by UNDERWOOD and GARR when

Plaintiff's constitutional rights were violated by and/or through the search of the Wagner home and interrogation of M.E.W., without a warrant or other court order in the absence of any exigency or parental consent. At the time of the underlying events, the regularly established customs and practices of the County of Spokane's CPS agency and Sheriff's Department that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiff's constitutional rights include, but are not limited to:

a.   the custom and/or practice of entering and searching a

home without exigent circumstances (imminent danger of

serious bodily injury), court order and/or consent;

b.   the custom, and/or practice of interrogating and/or

examining a child

outside the presence of its parent(s) - without

judicial authorization

or parental consent - when there is no specific,

reasonable, and

articulable evidence that the child is in immediate

risk of suffering

serious bodily injury;

c.   The unwritten policy of acting with deliberate

indifference to the

rights of children and parents with whom CPS agents

and Sheriff's officers can regularly be expected to

come into contact by *failing* and/or *refusing* to

implement a practice of regular and adequate training

and/or supervision, and/or by failing to train and/or

supervise its officers, agents, employees and state

actors, in providing and ensuring compliance with the

constitutional protections guaranteed to

individuals, including those under the First, Fourth

and Fourteenth Amendments, when performing actions

related to child abuse and neglect investigations.

d.    The consistent failure by the County of Spokane to

investigate

violations of constitutional rights by CPS workers and

Sheriff's Officers, and consistent failure to

discipline CPS workers and Sheriff's Officers and

their supervisors involved in constitutional

violations so that violations of citizen's

constitutional

rights were not only accepted, but were customary;

(This list is not exhaustive due to the pending nature of

discovery and the

privileged and protected records of investigative and juvenile

dependency type

proceedings. Plaintiff may seek leave to amend this pleading as

more information becomes available.)

59.    On information and belief, County of Spokane CPS and

Sheriff's Department has engaged in each of the customs and/or

practices identified above on an ongoing and continuous basis at

least since 2013, if not earlier, and continues to engage in

said practices on an ongoing and daily basis.

60.   The County of Spokane is aware that its CPS workers and Sheriff's Officers, (1) search homes and interrogate children without first obtaining judicial authorization when there is no emergency circumstance and in contravention of the rights of both parents and children. Yet, the County of Spokane has made a knowing and conscious decision to refrain from promulgating a policy to prevent such misconduct, and has consistently and knowingly failed to provide any training to its social workers to inform them of the rights of parents and children to remain together absent undue government interference, the obligation of the officers to first obtain a warrant before searching homes when no exigency exists. The County of Spokane's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above, *i.e.* the known need for a specific policy prohibiting its social workers from searching homes without a warrant or emergency, is itself a 'policy' decision which constitutes a policy of deliberate indifference. Said policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that the County CPS Worker and Sheriff's Officer's Defendants both followed and

acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when they entered and searched the Wagner home and interrogated M.E.W., without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the children were in immediate risk of suffering serious bodily injury - none of which was constitutionally permissible, all of which would never have happened if they County of Spokane had refrained from deliberately ignoring its obligation to promulgate policies and the concomitant training necessary to inform its CPS workers and Sheriff's Officers of the constitutional proscriptions which govern their daily work.

61.  Plaintiff is informed and believes, that Defendant County of Spokane
failed to establish, adopt, and/or implement policies, procedures, and training
regarding the constitutional protections afforded to a parent and child by the First
and Fourteenth Amendments. Without such policies, procedures, customs, and/or
practices in place, the County of Spokane Social Workers and Sherriff's Officers were allowed and permitted to engage in conduct that was in violation of Plaintiff's constitutional

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF SPOKANE - 39

rights as more specifically alleged in the General Allegations set out herein above. On information and belief, the Defendant County's failure to adopt such polices was the moving force behind the violations of Plaintiff's constitutional rights and includes, but is not limited to:

  a. The County of Spokane had no written policy, procedure,

    custom, practice and/or training regarding the

   circumstances

    under which a county social worker or Sherriff's

    officer must obtain judicial authorization prior to

    entering and searching a home;


  b. The County of Spokane had no written policy, procedure,

    custom, practice and/or training delineating the

   constitutional

    protections afforded to a parent and child by the

   First, Fourth and

    Fourteenth Amendments;

  c. The County of Spokane had no written policy, procedure,

custom, practice and/or training instructing that a county social

worker must obtain judicial authorization or parental consent

prior to interviewing, examining, and/or interrogating a child –

outside the presence of its parent(s) – when there is no specific

articulable evidence that the child is in immediate risk of

suffering serious bodily injury;

By deliberately refraining from promulgating any of the aforementioned

policies, procedures, customs, practices and/or training, the County of Spokane

permitted the aforementioned basic policy decisions to be made by the lower level

CPS workers and Sheriff's officers. As a result, the County of

Spokane's policy, custom, and/or practice – as established,

adopted, and implemented by the CPS Worker and Sheriff's

Officers Defendants – was to search a home and interrogate a

child without judicial authorization, parental consent, and

without specific, reasonable, and articulable evidence to

suggest that the child is in immediate risk of suffering serious

bodily injury – that disregards the Plaintiff's constitutional

protections – was a substantial factor in causing harm to the

Plaintiff. Thus, as a matter of law, because there was not

formal policy preventing the aforementioned misconduct, even

though one was obviously needed, the officers on the line acted

on behalf of the County in making final policy decisions – which

is exactly what they entered and searched the Plaintiff's home

and interrogated her child without a warrant and in the absence

of any exigency.

    62.    Moreover, based on the duties charged to Spokane

County, including the police powers to lawfully search and seize

persons, Spokane County and its

policymaking officials, knew or should have known of the need to

establish

customs, policies, and practices required to protect the

aforementioned civil rights

of parents and their children.

    63.    Defendant Spokane County, including through its police

department,

established and/or followed procedures, customs, and/or

practices which were the

moving force behind the violations of Plaintiff's constitutional rights, including

those under the Fourth and Fourteenth Amendments, by, but not limited to the

following policies, practices, customs and/or procedures:

a. the policy of assisting municipalities, through providing armed

officers, of searching homes and interrogating

children without exigent circumstances (imminent

danger of serious physical injury), court order and/or

parental consent;

b. the policy of acquiescing in and reinforcing threats by social

workers if they and the social workers are not

permitted to

enter the home;

c. by acting with deliberate indifference in implementing a policy

of inadequate training, and/or by failing to train its

officers,

agents, employees and state actors, in providing the

constitutional protections guaranteed to individuals,

including

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT I AS TO COUNTY OF
SPOKANE - 43

those under the Fourth and Fourteenth Amendments, when

performing actions related to child abuse/neglect and

dependency type

proceedings;

e.  by acting with deliberate indifference in implementing a policy

of inadequate supervision, and/or by failing to adequately

supervise its officers, agents, employees and state actors, in

providing the constitutional protections guaranteed to

individuals, including those under the Fourth and Fourteenth

Amendments, when performing actions related to child abuse/neglect

and dependency type proceedings.

f.  The policy of failing to train and supervise its

officers, agents and employees in their duties and

obligations to intercede when an agent of another

public entity is violating the Constitutional rights

of families during an entry and search of home and

interrogation of children and to prevent such

violations.

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF
SPOKANE - 44

g.   the consistent failure by the Spokane County to investigate violations of constitutional rights by police officers, and consistent failure to discipline police officers and their supervisors involved in constitutional violations so that violations of the type alleged here, were not only accepted but were customary;

(This list is not exhaustive due to the pending nature of discovery.  Plaintiff reserves her right to amend this pleading as more information becomes available);

64.   Spokane County is aware that its officers regularly search homes, or participate in the interrogation of children without first obtaining a warrant or parental consent when there is no emergency circumstance and in contravention of the rights of both parents and children. Yet, on information and belief, Spokane County has made a conscious decision to refrain from promulgating a policy to prevent such misconduct, and has knowingly failed to provide any training to its

officers to inform them of the rights of parents and children to remain together absent undue government interference, and/or the obligation of the officers to first obtain a warrant before searching homes and interrogating children without parental consent when no exigency

exists.  Spokane County's decision to disregard these constitutional protections in the face of a known need for policies to prevent the specific misconduct alleged herein above, *i.e.* the known need for a specific policy prohibiting its officers from searching homes and interrogating without parental consent and without a warrant or emergency, is itself a 'policy' decision which constitutes a policy of deliberate indifference. Said policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that Spokane County Sheriff's Officer Defendants

followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when he seized,

and/or participated in the search of, Plaintiff's Home

and interrogation of Plaintiff's child, without

judicial authorization,

parental consent, and without specific, reasonable,

and articulable evidence to suggest that the children

were in immediate risk of suffering serious bodily

injury - none of which was constitutionally

permissible, and all of which would never have

happened if Spokane County had refrained from

deliberately ignoring its obligation

to promulgate policies and the concomitant training

necessary to inform its officers of the constitutional

proscriptions which govern their daily work.

65.    In, and prior to 2016, Defendant Spokane County failed to establish,

adopt, and/or implement policies, procedures, and

training regarding the constitutional protections

afforded to a parent and child by the First and

Fourteenth Amendments. Without such policies,

procedures, customs, and/or practices in place,

Spokane County Sheriff's Officer Defendants were

allowed and permitted to engage in conduct that was in

violation of Plaintiff's constitutional rights as more

specifically alleged in the General Allegations set out hereinabove. The Defendant Spokane County's failure to adopt such polices was the moving force behind the violations of Plaintiff's constitutional rights and includes, but is not limited to:

a.    Plaintiff is informed and believes that, in 2016, Spokane County had no written policy, procedure, custom, practice and/or training regarding the circumstances under which a county sheriff's officer must obtain judicial authorization prior to searching a home and/or interrogating a child without parental consent;

b.    Plaintiff is informed and believes that, in 2016, Spokane County had no written policy, procedure, custom, practice and/or training requiring a city police officer to obtain judicial authorization prior to searching a home and/or interrogating a child without parental consent, when there was no evidence that the child was in immediate risk of suffering serious bodily injury;

c.    Plaintiff is informed and believes that, in 2016, Spokane County had no written policy, procedure,

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF
SPOKANE - 48

custom, practice and/or training delineating the

constitutional protections afforded to a parent

and child by the First and Fourteenth Amendments;

d.    Plaintiff is informed and believes that, in 2016,

Spokane County had no written policy, procedure,

custom, practice and/or training instructing that

a county sheriff's officer must obtain judicial

authorization or parental consent prior to

interviewing, examining, and/or interrogating a

child – outside the presence of its parent(s) –

when there is no specific articulable evidence

that the child is in immediate risk of suffering

serious bodily injury;

e.    Plaintiff is informed and believes that, in 2016,

Spokane County had no written policy, procedure,

custom, practice and/or training instructing that

a city police officer must intervene, and/or

prevent, constitutional deprivations being

perpetrated by another government official.

66.    By deliberately refraining from promulgating any of

the aforementioned policies, procedures, customs, practices

and/or training in 2016,

Spokane County permitted the aforementioned basic policy decisions to be made by the lower level police officers. As a result, Spokane County's policy, custom, and/orpractice – as established, adopted, and implemented by the Sheriff's Officers Defendants in 2016 – was to search a home and interrogate a child without judicial

authorization, parental consent, and without specific, reasonable, and articulable

evidence to suggest that the child is in immediate risk of suffering serious bodily

injury, and/or fail to intervene, and/or prevent, constitutional deprivations being

perpetrated by another government official. These policies, customs, and/or

practices – that disregards the Plaintiff's constitutional protections – was a

substantial factor in causing harm to the Plaintiff. Thus, as a matter of law, because

there was not formal policy preventing the aforementioned misconduct, even

though one was obviously needed, the officers on the line acted on behalf of the

City in making final policy decisions – which is exactly what they did when they

seized, and/or failed to prevent, the Plaintiff's children without a warrant and in the

absence of any exigency.

67.    The state of the law regarding the constitutional protections afforded

to a parent and child by the First and Fourteenth Amendments was clearly

established well before 2016. As such, Spokane County knew before 2016 that its

sheriff's officers required training on the constitutional protections afforded to a

parent and child. Despite this knowledge, Plaintiff is informed and believes that,

Spokane County deliberately failed to train its sheriff's officers on these

constitutional protections, including, but not limited to, the following:

a.    In 2016, and prior, Spokane County did not provide training to

its sheriff's officers regarding the

circumstances under which judicial authorization

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983     • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS        • COUNT 1 AS TO COUNTY OF
SPOKANE - 51

must be obtained prior to entering and searching

a home without parental consent;

b.    In 2016, and prior, Spokane County did not

provide training to

its sheriff's officers regarding the fact that

judicial

authorization must be obtained prior to entering

and searching a home without parental consent,

when there was no evidence that the child was in

immediate risk of suffering serious bodily

injury;

c.    In 2016, and prior, Spokane County did not

provide training to

its sheriff's officers regarding the fact that

judicial authorization or parental consent is

required prior to interviewing, examining, and/or

interrogating a child - outside the presence of

its parent(s) - when there is no specific

articulable evidence that the child is in

immediate risk of suffering serious bodily

injury;

d.    In 2016, and prior, Spokane County did not

provide training to

its sheriff's officers on the well-established constitutional

protections afforded to a parent and child by the First and Fourteenth Amendments;

e.  In 2016, and prior, Spokane County did not provide training to

its sheriff's officers instructing that a sheriff's officer must

intervene, and/or prevent, constitutional deprivations being

perpetrated by another government official.

68.  In 2016, and prior, Spokane County's deliberate failure to train its sheriff's officers on these established constitutional protections was a substantial

factor in causing the Plaintiff's harm, in that the Sheriff's Officers Defendants were unfamiliar with and oblivious to the Plaintiff's constitutional rights

- and their attendant obligation to protect and defend those rights, when the Sheriff's Officers Defendants participated in the entry and search of Plaintiff's home, and interrogation of Plaintiff's child and/or failed to intervene, and/or prevent the search of, Plaintiff's home and interrogation of Plaintiff's

child without judicial authorization, parental consent, and in the absence of exigent circumstances.

69.    Plaintiff is informed and believes that, Spokane County failed to investigate the Sheriff's Officers Defendants' entry and search of, participation in the entry and search of, and/or failed to intervene, and/or prevent the search of, Plaintiff's home and interrogation of her child without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury. Plaintiff is further informed and believes that, Spokane County never investigates a sheriff's officer for such conduct.

70.    Plaintiff is informed and believes that, Spokane County failed to discipline the Sheriff's Officers Defendants for the entry and search of, participation in the entry and search of, and/or failed to intervene, and/or prevent the entry and search of, Plaintiff's home and interrogation of her child without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury.

Plaintiff is further informed and believes that, Spokane County never disciplines a police officer for such conduct.

71.    Plaintiff is informed and believes that Sheriff's Officers Defendants'

search of, participation in the entry and search of, and/or failed to intervene, and/or prevent the search of homes, and interrogation of children without parental consent and without judicial authorization and in the absence of exigent circumstances, was not an isolated incident. On the contrary, such warrantless and unlawful entries and searches are regular and recurring when Spokane County Sheriff's Department is called upon by CPS social workers to assist them.

72.    Spokane County breached its duties and obligations to Plaintiff by,

including but not limited to, failing to establish, implement and follow the correct

and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control their officers, agents and employees as to

their compliance with Constitutional safeguards with deliberate indifference; and

by knowingly, or with deliberate indifference, permitting the DEFENDANTS to engage in the unlawful and unconstitutional conduct as herein alleged.

73. Spokane County knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiff to be injured and damaged by their wrongful policies and acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

74. The state of the law regarding the constitutional protections afforded to a parent and child by the First, Fourth and Fourteenth Amendments was clearly established well before 2016. As such, the County of Spokane knew before 2016 that its county CPS workers and Sheriff's officers required training on the constitutional protections afforded to a parent and child. On information and belief, despite this knowledge, the County of Spokane deliberately failed to train its county social workers and sheriff's

officers on these constitutional protections,

including, but not limited to, the following:

a.  The County of Spokane did not provide training to its
county CPS workers and sheriff's officers regarding
the circumstances under which judicial authorization
must be obtained prior to entering and searching a
home;

b.  The County of Spokane did not provide training to its
county CPS workers and sheriff's officers regarding
the fact that judicial authorization or parental
consent is required prior to interviewing, examining,
and/or interrogating a child - outside the presence of
its parent(s) - when there is no specific articulable
evidence that the child is in immediate risk of
suffering serious bodily injury;

c.  The County of Spokane did not provide training to its
county CPS workers and sheriff's officers on the well-
established constitutional protections afforded to a
parent and child by the First, Fourth and Fourteenth
Amendments.

The County of Spokane's deliberate failure to train its CPS
workers and sheriff's officers on these established
constitutional protections was a substantial factor in causing

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983    • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS    • COUNT 1 AS TO COUNTY OF
SPOKANE - 57

the Plaintiff's harm, in that CPS agents and sheriff's officers working for the County of Spokane were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the CPS Worker and Sheriff's Officer Defendants entered and searched Plaintiff's home and interrogated her child, without judicial authorization, parental consent, and in the absence of exigent circumstances.

75.   Plaintiff is informed and believes that, the County of Spokane failed to investigate the CPS Worker and Sheriff's Officer Defendants' entry and search of Plaintiff's home and interrogation of her child children without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury, as set forth in the general allegations. Plaintiff is further informed and believes that, the County of Spokane never investigates a CPS worker or sheriff's officer who enters and searches a home and interrogates a child without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury.

76.   Plaintiff is informed and believes that, the County of Spokane failed to discipline UNDERWOOD and GARR and DOES 1-3 for

entering and searching Plaintiff's home and interrogating her child children without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury. Plaintiff is further informed and believes that, the County of Spokane never disciplines a CPS worker or sheriff's officer for entering and searching Plaintiff's home and interrogating her child without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury.

77.   Plaintiff is informed and believes that the warrantless entry and search of her home and interrogation of her child by the CPS Workers and sheriff's officers was not an isolated incident specific to her circumstances. On the contrary, such warrantless and unlawful seizures are regular and recurring.

78.   County of Spokane, including by and through its entity CPS and Sheriff's Department and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train,

control, and review its agents and employees as to their

compliance with Constitutional safeguards; and by deliberately

permitting the Defendants, to engage in the unlawful and

unconstitutional conduct as herein alleged with at total and

deliberate indifference

to the rights of affected parents, including Plaintiffs herein.

79.    County of Spokane knew, or should have known, that by

breaching the above-mentioned duties and obligations that it was

reasonably foreseeable that its agency policies, practices,

customs, and usages would, and did, directly cause Plaintiff to

be injured and damaged by County of Spokane's wrongful

practices, or deliberate lack of official policies to prevent

the known practices from occurring.

80. In fact, the County of Spokane has been aware, since at

least 2013, that its CPS agents and sheriff's officers regularly

and customarily interrogated children and obtained entry and

searches of homes under duress in the manner described herein –

i.e, in the absence of any exigency without first obtaining a

warrant and on a regular and continuous basis. Yet, despite such

foreknowledge, Spokane County has deliberately refrained and

refused to promulgate any form of prophylactic policy to define

acceptable conduct of its CPS workers and sheriff's officers in

such a manner as to protect the citizens with whom they

regularly come into contact. The conduct described herein is so pervasive that it has become common knowledge that they type of misconduct alleged herein is commonplace within CPS and the Sheriff's Department to such an extent that Spokane County can be said to be deliberately indifferent to the need to promulgate policies and provide training to rein in its CPS agents and sheriff's officers, and prevent the type of misconduct alleged herein. Such a policy of indifference was in fact the moving force behind the violation of Plaintiffs' constitutional rights as alleged herein above. Namely, Plaintiff's civil rights were violated, as mentioned above, when Defendants, while acting under color of state law and in conformance with official customs and practices of the County of Spokane jointly acted to enter Plaintiff's home without a warrant.

81.    These actions, and/or inactions, of County of Spokane were the moving force behind, and direct and proximate cause of Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiff has incurred, and will continue to incur, costs and expenses, and may incur attorney fees; including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial – or after – trial.

## JURY DEMAND

Plaintiff demands a jury trial as to all issues so triable.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as
to all causes
of action, as follows:

    1.   General damages and special damages according to
proof, but in no event less than $1,000,000;

    2. As against only the individual defendants and not any
municipality, punitive damages as allowed by law;

    3. Attorneys fees pursuant to 42 U.S.C. § 1988, and any
other appropriate statute;

    4. Costs of suit incurred herein; and

    5. Such further relief as the Court deems just and proper.

January 28, 2019

Jodianne Wagner, Pro Se

COMPLAINT FOR DAMAGESCLAIM 1 – 42 U.S.C. §1983      • COUNT 1 – UNWARRANTED ENTRY
AND SEARCHCLAIM 2 - MONELL-RELATED CLAIMS      • COUNT 1 AS TO COUNTY OF
SPOKANE - 62